Thank you. Good afternoon, your honors. May it please the court. Laurie Sobranski on behalf of the appellant, Sgt. Mateu. I'm going to try to reserve five minutes of time for my rebuttal. Under Graham, the reasonableness of Sgt. Mateu's conduct is based on the objective facts that he faced at the scene. What he saw and what we can see on the video. These are undisputed objective facts that must be accepted by the jury, and that underpin both the excessive force and qualified immunity analyses. So it's important that we know what they are. First, two shots are fired on a public street in West Oakland across the street from a very busy BART station during commute hours that sends bystanders running for cover. Two men are on the sidewalk struggling over a gun. Mr. Tyndall is lying on the ground with his left hand around the grip of the gun. Mr. Newton is kind of over him with his hand on the barrel of the gun, pointing it away from himself. The men ignore repeated commands over eight seconds to show their hands. Then Mr. Tyndall, with the gun in his left hand, moves up onto his knees, turns his back to the officer and moves both hands in front of his body where the officer can no longer see. The gun does not drop. Two seconds later, Mr. Tyndall raises an empty left hand, which previously held the gun, and kind of raises his upper body and turns it toward Mr. Newton. Sgt. Mathieu fires a half a second later, and the gun falls from Mr. Tyndall's right hand when he's shot. So from these objective facts, Sgt. Mathieu deduces correctly that Mr. Tyndall transferred the gun from his left hand to his right instead of dropping it, and therefore Mr. Tyndall remained armed as his left hand was raised. The only thing we don't see from that video is what was happening with Mr. Tyndall's right hand when he had the gun, because his back was to Sgt. Mathieu and we can't see that. Plaintiffs argued at trial without evidence that Mr. Tyndall was trying to surrender, but Mr. Newton was doing something that we can't see that prevented Mr. Tyndall from raising that right hand. And in that case, they argued there cannot be an imminent threat. And they argued that what Sgt. Mathieu should have done was to just wait until he knew for sure whether Mr. Tyndall posed a risk of shooting. You make it sound like all they did was argue that. The jury, as a matter of finding a fact, found that Mr. Tyndall was attempting to surrender. Don't we have to assume that in our undisputed facts too? Well, the reason we can't assume that is because there was no substantial evidence to support that finding. And this is one of the fundamental problems with the analyses going forward. The question that we're answering is whether a reasonable officer in those moments could have assumed, as Sgt. Mathieu did, that Tyndall might fire the gun at any moment since, knowing this, shots had already been fired, orders to show hands were ignored, Tyndall had transferred the gun from one hand to the other instead of dropping it, and then turned his body towards Mr. Newton. Or, does an officer have to assume that Mr. Tyndall's continued possession posed no immediate threat, since Sgt. Mathieu didn't know for certain whether something he couldn't see was preventing Mr. Tyndall from raising his hand. You're right, Your Honor, the jury did decide that Mathieu's threat assessment in that moment was constitutionally unreasonable, and they made two factual findings. That Mr. Tyndall was attempting to surrender, and that Mr. Tyndall possessed the gun in the moments before it fired. So, the problem that I see with Your Honor's question, which is a totally legitimate question, of course, is that even with the constraints of a 50-B motion, there has to be substantial evidence in order to support the jury's finding. It cannot be based on speculation. In this case, there is no substantial evidence that Mr. Newton was doing anything with Mr. Tyndall's right hand that prevented Mr. Tyndall from raising both hands in surrender. No one could see it, and plaintiffs can see that. The video doesn't show it. Sgt. Mathieu didn't see it. There's no objective sign of it. Mr. Tyndall never says it. Excuse me if you don't mind a question. Do you contend that if he raised one hand, that's a surrender? Or you have to have two hands raised to be a surrender? Sgt. Mathieu testified that in his training and his experience and his perception, you have to raise two hands to show surrender unless there's some obvious reason that you can't. Okay, that was a witness. We don't know what the jury believed. Was there any instruction? No, there was no instruction about one hand versus two hands, so we don't know what the jury believed. We know that the jury found he was attempting, and we know that the jury found he also had the gun. So we can't look at the attempting to surrender finding in isolation. We have to look at them together. So they think he's trying to surrender, but he has the gun. So the question is, what is a reasonable officer on that scene, in that moment, at that time? I agree with you completely, and it's a very persuasive argument, but it seems to me it's foreclosed because the jury looked at it as a matter of fact. How do you get around that? I'm sympathetic because these cases are terrible to try. But it's not a matter of fact if there's no substantial evidence to support the jury's finding. If there was no substantial evidence to support the finding, the trial judge would have said the jury verdict is not supportable and would have found the opposite to be true. And you keep saying that the jury also found that Mr. Tyndall possessed the gun, but it seemed like they were thinking both of them were still struggling over the gun and both of them might have possessed it at the same moment. The trial judge said you don't have to make that finding in terms of whether it was joint possession or whatever. But look, I've been wearing the black for 32 years, and I've seen jurors bend over backwards to clear police officers in situations where I was shocked that they were giving the officer every benefit of the doubt, not just under the jury instructions, but under their personal experiences. Now, this one may have gone the other way in the sense that the jury didn't give Officer Michoud what I might have given him in terms of the benefit of the doubt. But does that mean that the jury verdict should be cast aside? I might have granted some re-judgment in this. I'm not sure. But once you submit it to the jury and you give them those instructions, which were not objected to down below, and the separation of the issues was not objected to down below, how can we ignore the jury verdict? How can we just say, well, that's just wrong? There's no evidence to back that up. There's no reason. Well, I'm not suggesting that we should just ignore it, but I'm suggesting that on review, our job is to look to see whether it is legally supportable. And in this case, I think there is just no evidence that would have supported a finding. In order for the jury to decide that he was attempting to surrender, they had to find that Mr. Newton was interfering with Tyndall's hand. And the only thing that told the jury that was argument by counsel. The only evidence about it in this record was Matus' expert, Mr. Freeze, who did a 3D forensic animation, who said, given Mr. Newton's size and body position, it was not possible for Mr. Newton's hands to actually reach Mr. Tyndall's hand with the gun that would have prevented him from raising it. There was no expert to counter that. They just plain criticized Mr. Freeze, but there was no contrary evidence. And even if you discount him, you're still back to the place where you have an argument that this might have happened. No one knows. Both parties admitted, and no one knows what was happening behind Mr. Tyndall. We don't know to this day what was happening with that hand. So I'm not saying we should ignore it. I'm saying we have to look at the jury's findings to see if they are factually supported, and we can't speculate about what they might have thought or concluded in it, in terms of whether they were jointly possessing or whether they had control. We don't know. All we know is that they decided that Mr. Tyndall possessed that gun and that he was simultaneously attempting to surrender. So was Mattel's perception reasonable, knowing what he knew, not after the jury? Why shouldn't we interpret the jury? So the verdict form wording was agreed to by the parties. Why shouldn't we interpret the verdict form as being about what a reasonable officer would have observed? So it seems like you want to say that this surrender was just subjectively not something the officer would have understood. But isn't the question on the verdict form about what the officer would have understood? You know, I think the question on the verdict form was vague in that. I think the question on the verdict form probably should have been, and if it were a do-over, I would say the question should be, would a reasonable officer have perceived that he was attempting to surrender? But I will also say this. The fact that there was a decision that he was attempting to surrender, whether we use the perception or whether we use it, doesn't end the question. Because a suspect that is attempting to surrender, but has all of these other factors going on simultaneously that the officer is perceiving, is not the final word. And we know that from cases that have recently been published. In fact, one that Judge Wallace is very familiar with, Amons v. Tyndall, for example, where it was a very similar situation. And there was an attempt to surrender, but the court said, you have to look at the circumstances of the surrender. In Amons, which is a recent case from 2021, two officers responded to a drug sale in a restaurant parking lot. They approached Mr. Amons sitting in the driver's seat of the car. The officer noticed a gun in the center console within arm's reach. They commanded Mr. Amons to put his hands on the steering wheel, which he did. And then when an officer opened the door, Mr. Amons reached his right hand down toward his hip. For five seconds, the officers commanded Mr. Amons to put his hands up. He put his left hand up, but not his right hand up. He put the right hand back down, moving toward the gun. And a fraction of a second later, the officer fired. This is very similar to what happened here. The district court made an inference that he was reaching for his seat belt, and this court reversed and said, whatever we think he was trying to do, he was attempting to do, he failed to put his hands up as ordered. He reached in the direction of a gun that was inches from his hand. It just seems like your effort to say he was only attempting, it was only subjective, why wouldn't it be your burden to get the verdict form to be worded the way that you think you need it for your defense? I don't understand why we can just now disregard the verdict form, because you never fixed it. Well, I'm not saying the verdict form is fatal to anything. The verdict form is what it is. I mean, what I'm saying is, even if you take the verdict form at face value, and that he was trying to surrender, that's not the end of the inquiry for Officer Mattu. Officer Mattu is looking at all of the objective facts before him. And maybe he says, gee, he's raising the left hand, maybe he's trying to surrender, but gosh, on the other hand, he has a gun. And he could have dropped that gun, but he didn't drop the gun. And now he's turning toward this other gentleman who is in the line of fire, and I'm in a public place, and people's lives are in danger. That split second decision that Officer Mattu made is the exact kind of decision that we cannot, that courts should be so reluctant to second guess. You only have a minute left. Did you want to save any time for rebuttal? I will save it. Thank you. Good afternoon, Your Honors. May it please the Court, I'm Ayanna Curry, representing plaintiffs in this matter. I feel like, based on the judges' questions, you're honing in on certainly plaintiffs' issues with the appeal. First of all, what is substantial evidence? We had that whole, we listened to that whole colloquy, and you wouldn't know that there's a video of the incident. The jury got to see exactly what the officer got to see. That's one. Is that true, that he saw exactly the same thing? Well, okay, so his eyes are, it was established that his eyes are 15 inches above the body cam. So, that's my second point. We have the, the jury did have the video, but they also had the officer's testimony, and his officer involved the OIS interview statements that happened, you know, within hours of the shooting. He was represented by counsel at the OIS, and he saw the video for himself before he ever gave initial, you know, thoughts in the initial justification for the shooting. His initial justification for the shooting is that Mr. Tyndall was standing up, was standing up. And, you know, faced with the specter of him standing, it was, I had, I had to shoot him. And then, at trial, has to walk it back and admit he wasn't standing. I was mistaken. So, you have, you have, you know, the jury is faced with an officer who is impeaching his own credibility and is falling on his sword saying, yeah, I got it wrong. And now, at trial, is adhering to a narrative that he didn't even, that he didn't put forward. We don't know what the jury decided. We don't know what the jury decided. No, I'm telling you what was, what they had in front of them. They could have anything. I was a trial lawyer before I was a judge. And you're never able to guess, at times, how juries come up. So, I don't have that much weight. I'm just trying to point out that they had a credibility determination based on the officer's varying justifications. We don't know how they decided this case. You don't know if they believe the officer completely, but just interpreted what they blessed differently. Sure. Knowing. Sure. I appreciate your point, Judge Wallace. The other point, you know, I'm getting back to my initial concern about, well, what is substantial evidence? We have video evidence. We have testimonial evidence. The officer initially said that he could see that they were still struggling over the gun. Again, I was doing the OIS statement. Then, at trial, says, could see nothing, could see no impediment to his right hand, to Mr. Tyndall's right hand. That simply just is not true, based on his own previous statement. And the video does show them struggling over the gun. And the video does show struggling over the gun. Mightily struggles over the gun. Life and death struggle over a gun. So this notion that there's no evidence flies in the face of what the whole trial was about and what the whole denial of motion for summary, why the issue went to the jury in the first place. You have objective factors of objective signs of surrender. Show me your hands. And then raising the hand that you physically could raise. And he was on his knees. He wasn't picking up. Those are objective signs. So the question of the trial was, is it reasonable to see objective signs of surrender, view them as a threat, and then shoot a man in the back three times when he is surrendering. This term of art in terms of attempting to surrender, he was surrendering. And he got shot for it. Got shot for complying with the officer's commands to do what he was saying to do. I wanted to other this notion that the recreation expert, that that was evidence. The recreation expert had the other assailant, the other man's left arm at his side. I think that's clear on the video that both of his hands were in the fight. Mr. Newton never gave up the fight. Never stopped what he was doing. When we initially see the man and we see the gun on the ground, Mr. Newton had that gun pointed away from him. So when the gun comes out of view, that provides circumstantial evidence that he had that gun away from him at that point, too. That's why he never stopped his action. That's why he never stopped what he was doing. You can make, why it is that the facts and the inferences from the facts that plaintiff draws is not supported by substantial evidence, but the officer, everything that he, you know, deduction that he made somehow is evidence. We are all making inferences and deductions from the evidence in front of us. And they are both supported by substantial evidence. You cannot, as the judges have pointed out, take this verdict away from the jury because the evidence, because you could come to a contrary conclusion. And that's where we are. I wanted to talk about Amon's. That case is distinguished. There the officers could see the right hand and gave him every opportunity to raise his right hand and he didn't. There was no impediment to his right hand. We could go on forever with these cases. Indeed, the police officer said, show me your hands, Pearl. And he shows one hand. And you could assume the police officer was afraid the other hand had a gun because they were struggling for a gun. We can't go back and make these determinations. I don't see how we get help when you have a jury. The jury makes the decision. And unless there's something to say that the jury, we cannot accept the jury decision like that somebody was paid $100. I don't see how this argument is getting us very far along regardless of how you come out. I wish the case. But go ahead. I appreciate your point and I don't disagree with you. We have a jury. We have a jury verdict. We have, as your honor pointed out, special interrogatories that were written by the defendant and given to the jury without alteration. We were asked, the jury was asked the questions that the defendant himself wanted to know. So I don't know how you crawl over and take the verdict. The request here is to not only overturn the verdict but to enter judgment for the officer. I'm just as flummoxed. I don't know how you do that based on the facts that we have here. I will address qualified immunity. You know, that's why, again, that's why the case went to trial. The question is surrender and compliance. The jury found surrender. Surrender means no threat anymore. So you can't use deadly force against a compliant surrendering suspect. Because this will be my last opportunity to talk, there are other issues that was in the briefing. There's this notion that the damages were excessive. The defendants took a gamble on not arguing damages to the jury. And we had, again, the damages award is supported by substantial evidence. One, you can see for yourself the video. You watch this man die and you watch him writhe in agony as he's dying. And you have the coroner's testimony as to what's happening, what you can't see, what's happening inside his body. Bullets ripping through his internal organs and he's literally drowning in his own blood. That's the most excruciating thing I could think of. So even in that argument on appeal, somehow we're disagreeing that the video even shows pain and suffering. Again, looking at that video, I don't know how, I see plenty of pain. I don't know how we quip about what the man is experiencing as we watch him die. The last point about evidence, it's axiomatic at this point. You can't consider evidence that the officer didn't know at the time of the shooting for the Fourth Amendment claims. They want to bring in evidence that the officer was not then aware and they did not factor in to his decision to shoot or use force. It's not relevant and it would have been explosively prejudicial to have allowed it. Do your honors have any other questions for me? If not, we will submit on our briefs. Thank you. Thank you. I think you have a bit of time for rebuttal, maybe one minute? Not much. It is not true that it was clear from that video that what was happening when Mr. Tyndall moved the gun from left to right, that Mr. Newton was bothering that arm. There is absolutely no evidence to support that. None. We know and we know that he had the gun in his right hand when he was shot. The fact that we have a jury that said he was attempting to surrender, we still have to consider fully that he had the gun in his right hand. So the officer is looking at all of these situations. All of those things I listed as objective facts are what we see on the video. It's not inferences. It's actual facts. On qualified immunity, this is what's important. This is probably the most important issue really to resolving the case. It is not enough to say qualified immunity applies because he was attempting to surrender. You have to consider all of the factual circumstances, all of them, that this officer faced. When you look at the totality of the circumstances, what case was clearly established at that time, given all of these circumstances, that what Officer Mattoo did was unconstitutional? There is none. It's plaintiff's burden to prove that. Not a single case that they have offered or that the district court offered shows that it was clearly established at that time that Mattoo could not make the judgment in an active shooter situation with a gun and shots already fired, that there was an immediate threat and he had to resolve that threat. I think I have to interrupt you there because you're over your time. Thank you for being generous. Thank you both sides for the very helpful arguments. This case is submitted and we're adjourned for the day. Thank you. Thank you, Your Honor.
judges: WALLACE, FRIEDLAND, Lasnik